UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WILLIAM J. STUCKEY, JR., Plaintiff | ) | |
| v. | ) | C.A. No. 07-310/ML |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, BRIDGESTONE AMERICAS HOLDING, INC., f/k/a BRIDGESTONE/ FIRESTONE AMERICAS HOLDING, INC. and JOHN DOE, Defendants | ) | |

**DEFENDANT CONNECTICUT GENERAL LIFE INSURANCE COMPANY'S RULE 56(a) STATEMENT OF UNDISPUTED FACTS**

In support of its motion for summary judgment and pursuant to L.R. Cv. 56(a), the defendant Connecticut General Life Insurance Company ("CGLIC") states the following undisputed facts:

1. Plaintiff was a long-time employee of Bridgestone Americas Holding, Inc., f/k/a Bridgestone/Firestone Americas Holding, Inc. ("Bridgestone/ Firestone"). Complaint, ¶¶5-6.

2. During his employment at Bridgestone/Firestone, plaintiff purchased through payroll deductions coverage under a group universal life insurance policy. Id., ¶¶7-8.

3. CGLIC issued a Group Flexible Premium Adjustable Life Insurance Policy to the Trustee of the National Employer Group Insurance Trust. Bridgestone/ Firestone is a participating employer in the Trust. Terms of coverage are set forth in the certificate appended to the Worst Affidavit as Exhibit A. Worst Affidavit, ¶5.

4. In or about July, 1998 plaintiff moved his residence from Slatersville, Rhode Island to North Providence, Rhode Island. Complaint, ¶9.

5. Plaintiff informed Bridgestone/Firestone of his new address. Later, he received mailings from Bridgestone/Firestone at his North Providence, Rhode Island address. Id., ¶10.

6. CGLIC in August, 2002 noted that no premiums were payroll deducted for plaintiff's life insurance coverage for the previous month. Consequently, it sent a premium bill directly to plaintiff at his address of record – the Slatersville, Rhode Island address. The postal service returned that bill to CGLIC as being undeliverable. Worst Affidavit, ¶6.

7. CGLIC in September, 2002 again noted that no premiums were payroll deducted for plaintiff's life insurance coverage for the previous month. It again sent a premium bill directly to plaintiff at his address of record – the Slatersville, Rhode Island address. The postal service returned that bill to CGLIC as being undeliverable. Worst Affidavit, ¶7.

8. On or about October 1, 2002 plaintiff retired from Bridgestone/ Firestone. Complaint, ¶6.

9. CGLIC was informed by Bridgestone/Firestone in November, 2002 that premiums for plaintiff's life insurance coverage would no longer be payroll deducted because plaintiff had been placed on a "leave of absence" status. CGLIC Answer, ¶3; Worst Affidavit, ¶8.

10. CGLIC on November 5, 2002 mailed a notice of premiums due to plaintiff at his address of record (Slatersville, Rhode Island) for the months of July through December, 2002. Id., ¶9.

11. CGLIC on December 10, 2002 mailed a reminder notice of premiums due to plaintiff at his address of record (Slatersville, Rhode Island) for the months of July, 2002 through March, 2003. This notice alerted plaintiff that payment must be received by December 28, 2002 or his coverage would lapse. Id., ¶10.

12. Plaintiff never informed CGLIC of his change of address. Id., ¶11.

13. The premium notices CGLIC mailed to plaintiff were returned by the post office as being undeliverable, with no forwarding address on file. Id., ¶12.

14. Plaintiff never received CGLIC's notices. Complaint, ¶12.

15. CGLIC last received a premium payment for plaintiff's coverage in June, 2002. Worst Affidavit, ¶13.

16. The Net Cash Value of plaintiff's coverage as of June, 2002 was $0. Id., ¶14.

17. Plaintiff's coverage lapsed on January 9, 2003 due to the non-payment of premiums. Id., ¶15.

18. Bridgestone/Firestone failed to send plaintiff pension checks for approximately five months following his retirement. Plaintiff subsequently contacted Bridgestone/Firestone regarding his pension, medical and life insurance coverage. Exhibit 1, p. 2.

19. Bridgestone/Firestone corrected "the issues" with plaintiff's pension and notified "CIGNA"[1] of plaintiff's current information for his medical coverage. However, Bridgestone/Firestone informed plaintiff he would have to contact "CIGNA" directly regarding his life insurance coverage." Id.

[1] Plaintiff initially sued "Cigna Corporation" as the insurer of his life insurance coverage. The parties have agreed to substitute CGLIC as the correct insurer of the coverage at issue.

20. Plaintiff never received any correspondence or premium notices from CGLIC following his retirement. Complaint, ¶12.

21. On or about October 17, 2003 plaintiff contacted CGLIC about the status of his group life coverage; he was advised that coverage had lapsed due to the non-payment of premiums. Id., ¶13.

22. Plaintiff requested reinstatement of life insurance coverage from CGLIC and underwent a medical examination. Id., ¶15.

23. CGLIC advised plaintiff on or about July 27, 2004 that his request for reinstatement of coverage was denied because he was found to have diabetes. Id., ¶16.

24. Plaintiff on or about July 24, 2007 filed a complaint in Providence County Superior Court against Bridgestone/Firestone and CGLIC, seeking reinstatement of coverage and other relief.

25. Against CGLIC plaintiff alleges claims for negligence, breach of good faith and fair dealing, breach of fiduciary duty, breach of contract and unjust enrichment. Complaint, Counts IV - VIII.

26. In this action plaintiff alleges:

> Bridgestone[/Firestone] did not provide CGLIC with my current address. If Bridgestone[/Firestone] had provided CGLIC with my current address, I would have received the payment notices and cancellation notices allegedly mailed by CGLIC. Furthermore, according to my CGLIC insurance policy, Bridgestone[/Firestone] was required to notify CGLIC of the date I stopped working for Bridgestone[/Firestone]. At that time, Bridgestone[/Firestone] had an obligation to provide CGLIC with my address because Bridgestone[/Firestone] knew my current address. Additionally, any changes that I made to the named beneficiary were done through Bridgestone [/Firestone], which transmitted that information to the carrier, which in turn provided me with the necessary document. I was unable to communicate directly with CGLIC, and was always

> instructed that any policy-related issues were to be handled through my employer.

Exhibit 2; Plaintiff's Answer to Bridgestone/Firestone Interrogatory No. 7.

27. The terms of coverage provide, in part:

> **PREMIUM PROVISIONS (Continued)**
>
> **Grace Period For Insured.** If the Net Cash Value for any Insured on any Monthly Premium Date is less than the required Monthly Deduction, a Grace Period For Insured of 61 days will be granted to the Insured to pay a premium sufficient to cover the required Monthly Deduction for the next two months. (The Net Cash Value and Monthly Deduction are described under Nonforfeiture Provisions.) If such premium is not paid within the Grace Period For Insured, the coverage under the Policy for that Insured and any Class C Insureds for whom he has elected the insurance will lapse without value at the end of the Grace Period For Insured.
>
> At least 31 days before the end of the Grace Period For Insured, CG will notify the Class A, Class B, Class D, Former Class A, Former Class B, and Spouse of a Former Class A Insured, or Owner, if different, that there is insufficient Cash Value for him under the Policy. Failure to give notice will not extend the Death Benefit beyond the Grace Period. If the Insured dies during the Grace Period For Insured, CG will deduct any overdue Monthly Deduction from the Death Benefit payable.
>
> **Reinstatement.** After an Insured's coverage has lapsed, it may be reinstated at any time prior to five years after the date of Lapse if:
>
> - the Insured's Certificate has not been Surrendered for the Cash Value; and
> - a written request for Reinstatement and a new enrollment form are sent to CG; and
> - the Insurability Requirement has been satisfied; and
> - Planned Monthly Premiums are paid for at least two months; and

- any Indebtedness against the Insured's Cash Value, increased by any Loan Interest, is paid.

The effective date of the reinstated coverage will be the Monthly Calculation Date that is the same as or next follows the date the request for Reinstatement, the evidence of insurability, and the new enrollment form are accepted by CG.

Worst Affidavit, Exhibit A, p. 35.

/s/ Brooks R. Magratten
Brooks R. Magratten, Esq., #3585
Catherine A. Shaghalian, Esq., #6883
VETTER & WHITE
Attorneys for Defendant Connecticut General Life Insurance Company
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
cshaghalian@vetterandwhite.com

Dated: July 11, 2008

CERTIFICATE OF SERVICE

To:

Carl S. Levin, Esq.
Armstrong, Gibbons & Gnys, LLP
155 South Main Street – Suite 301
Providence, RI 02903

Jason D. Fisher, Esq.
Waller Lansden Dortch & Davis, LLP
511 Union Street – Suite 2700
Nashville, TN 37219

James A. Ruggieri, Esq.
Samuel C. Bodurtha, Esq.
Higgins, Cavanagh & Cooney, LLP
123 Dyer Street
Providence, RI 02903

I hereby certify that I electronically filed the within Rule 56(a) Statement of Undisputed Facts on July 11, 2008. The Statement is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above-identified counsel of record will be effectuated by electronic means and by mailing first class mail, postage prepaid, to non-registered parties.

/s/ Brooks R. Magratten