**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| WILLIAM J. STUCKEY, JR. | : | |
| | : | |
| V. | : | C.A. No. 07-310ML |
| | : | |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, BRIDGESTONE AMERICAS HOLDING, INC. f/k/a BRIDGESTONE/ FIRESTONE AMERICAS HOLDING, INC. & JOHN DOE | : | |

**PLAINTIFF WILLIAM J. STUCKEY, JR.'S RULE 56(a) STATEMENT OF UNDISPUTED FACTS**

In support of the motion for summary judgment filed by Plaintiff, William J. Stuckey, Jr., and in opposition to the motion for summary judgment filed by Defendant, Connecticut General Life Insurance Company, Plaintiff states the following undisputed facts:

1. Plaintiff was employed by Bridgestone/Firestone Americas Holding, Inc. ("Bridgestone") from August 1971 to September 2002. **Stuckey Aff. ¶1.**

2. Since July 1999, Plaintiff has resided at 2008 Mineral Spring Avenue, Unit 12, North Providence, Rhode Island. **Stuckey Aff. ¶2.**

3. Between September 1998 and July 1999, Plaintiff lived at 36 Fillion Drive, Slatersville, Rhode Island. **Stuckey Aff. ¶3.**

4. Between July 1998 and September 1998, Plaintiff lived at 203 Holly Lane, Woonsocket, Rhode Island. **Stuckey Aff. ¶4.**

5. Between September 1997 and July 1998, Plaintiff lived at 10 Montrose Street, Providence, Rhode Island. **Stuckey Aff. ¶5.**

6. Between 1989 and September 1997, Plaintiff lived at 5 Plantation Drive,

Cumberland, Rhode Island. **Stuckey Aff. ¶6.**

7. Each time Plaintiff relocated, he prepared and filed a Notice of Mail Forwarding with the United States Postal Service. **Stuckey Aff. ¶7.**

8. Each time Plaintiff relocated, he notified Bridgestone of his new mailing address and telephone number. **Stuckey Aff. ¶8.**

9. Plaintiff's home telephone numbers have always been public and listed in the telephone directory. **Stuckey Aff. ¶9.**

10. Plaintiff has never had a post office box as a means of receiving mail. **Stuckey Aff. ¶10.**

11. Plaintiff began a medical leave of absence from Bridgestone in March, 2002. **Stuckey Aff. ¶11.**

12. Plaintiff remained on a medical leave of absence until September 2002, at which time he gave his notice of his retirement to Bridgestone. **Stuckey Aff. ¶12.**

13. While employed by Bridgestone, Plaintiff entered into a group universal life policy (the "Policy") through Bridgestone in 1986. **Stuckey Aff. ¶13, Exhibit 1.**

14. Johnson & Higgins/Kirke-Van Orsdel, Inc. ("Johnson & Higgins") was the broker for the Policy. **Stuckey Aff. ¶14.**

15. The face amount was $210,000.00. **Stuckey Aff. ¶15, Exhibit 1.**

16. At that time that Plaintiff entered into this contract, Plaintiff advised that he was a diabetic. **Stuckey Aff. ¶16.**

17. Plaintiff's payments for the Policy were deducted monthly from his paycheck by Bridgestone and forwarded to the carrier through July 2002. **Stuckey Aff. ¶17.**

18. Except as described herein, Plaintiff never had any correspondence, verbal or

written, with CGLIC, while he was a participant in the universal group life Insurance program. **Stuckey Aff. ¶¶ 18, 19, 20, 26 & 27.**

19. Plaintiff first became aware that he was insured by CGLIC when he received a copy of the Policy and a CGLIC insurance certificate in 1990 at his Plantation Drive address. **Stuckey Aff. ¶27, Exhibits 1 & 4.**

20. Plaintiff did not receive any other correspondence from CGLIC regarding the Policy. **Stuckey Aff. ¶28.**

21. Plaintiff was unable to communicate directly with CGLIC, and was always instructed that any policy-related issues were to be handled through Bridgestone. **Stuckey Aff. ¶18.**

22. When Plaintiff's wife died in 1990, Plaintiff notified Bridgestone, which in turn notified the carrier. **Stuckey Aff. ¶19.**

23. Any changes that Plaintiff made to the named beneficiary for the Policy were done through Bridgestone. **Stuckey Aff. ¶20.**

24. In 1997, Plaintiff notified Bridgestone that he wanted to change the beneficiary under the Policy. **Stuckey Aff. ¶21.**

25. Plaintiff received correspondence from Johnson & Higgins regarding this request. **Stuckey Aff. ¶22.**

26. In 1999, Plaintiff notified Bridgestone that he wanted to make his daughter, Alissa Stuckey, the named beneficiary of the Policy. **Stuckey Aff. ¶23.**

27. Plaintiff received correspondence from Johnson & Higgins regarding this request. **Stuckey Aff. ¶24.**

28. In 1997 and 1999, Plaintiff completed the necessary documents and mailed the

documents to Johnson & Higgins. **Stuckey Aff. ¶25.**

29. In addition to enrolling in the group universal life insurance policy, Plaintiff also had a basic life insurance policy with CGLIC that was provided through Bridgestone. **Stuckey Aff. ¶29.**

30. While employed by Bridgestone, Plaintiff received healthcare benefits from CIGNA Healthcare and Delta Dental, and was a participant in a retirement plan with Fidelity Investments. **Stuckey Aff. ¶30.**

31. Plaintiff received documents from CIGNA Healthcare, Delta Dental and Fidelity Investments at all of his addresses both prior and subsequent to his retirement. **Stuckey Aff. ¶33.**

32. Plaintiff never notified CIGNA Healthcare, Delta Dental or Fidelity Investments of any changes in his addresses. **Stuckey Aff. ¶31.**

33. I received documents from Bridgestone at all of my addresses. **Stuckey Aff. ¶31, Exhibit 5.**

34. Plaintiff believes that Bridgestone notified CIGNA Healthcare, Delta Dental and Fidelity Investments of Plaintiff's changes in address. **Stuckey Aff. ¶32.**

35. When Plaintiff retired from Bridgestone, Plaintiff did not notify CGLIC, CIGNA Healthcare, Delta Dental or Fidelity Investments of his because he believed that Bridgestone would make the necessary notifications. **Stuckey Aff. ¶35.**

36. Plaintiff's belief that Bridgestone would make the necessary notifications of his retirement was confirmed by the fact that he continued to receive written correspondence from CIGNA Healthcare, Delta Dental and Fidelity Investments at his home address after his retirement. **Stuckey Aff. ¶36.**

37. Plaintiff continued to receive correspondence from Bridgestone at his home address following his retirement. **Stuckey Aff. ¶¶ 31 & 41, Exhibit 5.**

38. When Plaintiff did not receive his pension for the first five months of his retirement, he contacted Bridgestone to resolve the problem with his pension and to inquire into the status of the Policy. **Stuckey Aff. ¶¶ 38 & 39.**

39. Bridgestone advised Plaintiff to contact CGLIC directly to inquire about the Policy. **Stuckey Aff. ¶40.**

40. Plaintiff first learned that his policy was terminated in October 2003 when he contacted CGLIC regarding the Policy. **Stuckey Aff. ¶41.**

41. The person with whom Plaintiff spoke at CGLIC told him that in order to re-instate the Policy, Plaintiff was required to undergo an examination by a medical technician. **Stuckey Aff. ¶42.**

42. Plaintiff underwent a medical examination, during which he told the technician that he had diabetes since 1975. **Stuckey Aff. ¶43.**

43. Based upon Plaintiff being a diabetic, CGLIC refused to re-instate the Policy. **Stuckey Aff. ¶44 & Exhibit 6.**

44. Plaintiff was never told by CGLIC, Johnson & Higgins or Bridgestone that he was required to notify CGLIC of any change in his address. **Stuckey Aff. ¶45.**

45. The Policy does not contain any reference to Plaintiff's address. **Stuckey Aff. ¶46, Exhibit 1.**

46. The Policy does not contain any requirement that Plaintiff was to notify CGLIC of any change in his address. **Stuckey Aff. ¶47, Exhibit 1.**

47. The Policy does not contain any provision that required Plaintiff to notify any

person of any change in his mailing address. **Stuckey Aff. ¶48, Exhibit 1.**

48. Plaintiff never received any written or verbal communication from CGLIC, Bridgestone or Johnson & Higgins that the Policy payments had not been made. **Stuckey Aff. ¶49.**

49. Plaintiff never received any written or verbal communication from CGLIC, Bridgestone or Johnson & Higgins that the Policy was going to be terminated due to a lapse in premium payments. **Stuckey Aff. ¶50.**

50. Plaintiff never received any written or verbal communication from CGLIC, Bridgestone or Johnson & Higgins that the Policy was terminated. **Stuckey Aff. ¶51.**

51. CGLIC does not have any documents that demonstrate that (i) correspondence was mailed to Plaintiff, (ii) who mailed the correspondence, (iii) to what address the correspondence was mailed, (iv) the content of the correspondence, (v) the manner of mailing (ie: certified mail, U.S. mail, registered mail), (vi) that the correspondence was returned to CGLIC or (vii) whom on behalf of CGLIC received the returned mailings. **Exhibits 7 (numbers 1, 3, 4, 28, 35) & 8.**

52. Plaintiff never received any of the correspondence that CGLIC allegedly mailed to him advising of premiums due and the lapse in premiums. **Stuckey Aff. ¶52.**

53. Plaintiff never received notice from any person that CGLIC mailed any correspondence to him regarding his premiums. **Stuckey Aff. ¶53.**

54. Pursuant to the terms of the Policy, CGLIC was required to send to Plaintiff on an annual basis a report, which was to be attached to the certificate. **Exhibit 1, Page 39.**

55. Other than receiving a copy of the policy and the certificate in 1990, Plaintiff never received any annual reports or certificates from CGLIC. **Stuckey Aff. ¶54, Exhibits 1 & 4.**

56. CGLIC does not have any documents to demonstrate that it mailed the annual reports and certificates to Plaintiff. **Exhibits 7 (numbers 8, 9, 16, 17, 18, 27, 28, 71), 8 & 9.**

57. Plaintiff never received any notice from any person that CGLIC had mailed annual reports or certificates to him other than that which he received in 1990. **Stuckey Aff. ¶55.**

58. CGLIC prepared a history of Plaintiff's policy (the "CGLIC History") which was submitted by CGLIC in its 26(a) filing and in response to Plaintiff's request for the production of documents. **Exhibit 9.**

59. The July 20, 1998, entry in the CGLIC History reflects that CGLIC received a certificate packet that had been mailed by CGLIC to Plaintiff which was returned to CGLIC with the notation "unable to forward". **Exhibit 9.**

60. CGLIC does not have any documents that establish (i) that this correspondence was mailed to Plaintiff, (ii) who mailed this correspondence, (iii) to what address this correspondence was mailed, (iv) the content of this correspondence, (v) the manner of mailing (ie: certified mail, U.S. mail, registered mail), (vi) that this correspondence was returned to CGLIC, or (vii) whom on behalf of CGLIC received the returned mailing.. **Exhibits 7 (numbers 12, 27, 28) & 8.**

61. There are no documents evidencing any effort by CGLIC to contact Plaintiff, Bridgestone or Johnson & Higgins to obtain Plaintiff's mailing address after

being advised that the post office was unable to forward the mailing. **Exhibits 7 (numbers 8, 9, 16, 17, 18, 23, 24, 30, 38) 8 & 9.**

62. Plaintiff was never notified by CGLIC, Johnson & Higgins or Bridgestone that CGLIC did not have a mailing address for him since July 1998, during which time CGLIC continued to accept Plaintiff's monthly paycheck deductions. **Stuckey Aff. ¶56.**

63. The July 18, 2002 entry in the CGLIC history reflects that in June 2002, CGLIC was made aware that Plaintiff was on inactive work status due to a leave of absence. **Exhibit 9.**

64. The August 19, 2002, entry in the CGLIC history reflects that in July 2002 CGLIC did not receive the payment of $70.70 for Plaintiff because he was on leave of absence, and that a bill was sent to Plaintiff. **Exhibit 9.**

65. The September 5, 2002 entry in the CGLIC history reflects that bill mailed to Plaintiff was returned with the notation "unable to deliver". **Exhibit 9.**

66. The CGLIC history does not reflect (i) to which address this correspondence was mailed, (ii) who mailed this correspondence, (iii) the content of this correspondence, (iv) the manner of mailing, or (v) who on behalf of CGLIC received the returned mailing. **Exhibit 9.**

67. CGLIC does not have any documents that establish (i) that this correspondence was mailed to Plaintiff, (ii) who mailed this correspondence, (iii) to what address this correspondence was mailed, (iv) the content of this correspondence, (v) the manner of mailing (ie: certified mail, U.S. mail, registered mail), (vi) that this correspondence was returned to CGLIC, or (vii) whom on behalf of CGLIC

received the returned mailing. **Exhibits 7 (numbers 8, 9, 16, 17, 18, 30, 35, 38) 8 & 9.**

68. There are no documents evidencing any effort by CGLIC to contact Plaintiff, Bridgestone or Johnson & Higgins to obtain Plaintiff's mailing address after being advised that the post office was unable to deliver the August 2002 mailing. **Exhibits 7 (numbers 8, 9, 16, 17, 18, 23, 24, 30, 38) 8 & 9.**

69. The September 18, 2002 entry in the CGLIC history reflects that in August 2002, CGLIC did not receive the payment of $70.70 for Plaintiff because he was on leave of absence, and that a bill was sent to Plaintiff. **Exhibit 9.**

70. The October 18, 2002 entry in the CGLIC history reflects that a bill mailed to Plaintiff was returned with the notation "address unknown". **Exhibit 9.**

71. The CGLIC history does not reflect (i) to which address this correspondence was mailed, (ii) who mailed this correspondence, (iii) the content of this correspondence, (iv) the manner of mailing, or (v) who on behalf of CGLIC received the returned mailing. **Exhibit 9.**

72. CGLIC does not have any documents that establish (i) that this correspondence was mailed to Plaintiff, (ii) who mailed this correspondence, (iii) to what address this correspondence was mailed, (iv) the content of this correspondence, (v) the manner of mailing (ie: certified mail, U.S. mail, registered mail), (vi) that this correspondence was returned to CGLIC, or (vii) whom on behalf of CGLIC received the returned mailing. **Exhibits 7 (numbers 8, 9, 16, 17, 18, 35, 38) 8 & 9.**

73. There are no documents evidencing any effort by CGLIC to contact Plaintiff,

Bridgestone or Johnson & Higgins to obtain Plaintiff's mailing address after being advised that the post office was unable to deliver the September mailing. **Exhibits 7 (numbers 8, 9, 16, 17, 18, 23, 24, 30, 38) 8 & 9.**

74. The November 5, 2002 entry in the CGLIC history reflects that the Plaintiff was to be placed on direct bill because he was on leave of absence. **Exhibit 9.**

75. The CGLIC history does not reflect that any correspondence was mailed to Plaintiff after this entry. **Exhibits 7 (numbers 8, 9, 16, 17, 18) 8 & 9.**

76. In its response to Plaintiff's request for the production of documents, Bridgestone provided a copy of written correspondence from Debra Paul, Reconciliation Representative for CIGNA Group Universal Life Insurance (the "CGLIC Inquiry"), to Ray Madonia, who was Bridgestone employee. **Exhibit 10.**

77. The inquiry is dated November 4, 2002. **Exhibit 10.**

78. The inquiry was sent by facsimile transmission to Bridgestone. **Exhibit 10.**

79. The inquiry concerns a request by CIGNA for information regarding certain employees, including Plaintiff, because CIGNA had not received payroll deductions for these employees, and so that CIGNA could determine whether to send bills to these employees at their homes. **Exhibit 10.**

80. The inquiry includes the employee's name, social security number, the amount billed, the amount paid, the employee's status and whether the employee should be billed at home. **Exhibit 10.**

81. The inquiry does not inquire if CGLIC has the correct address for the employee. **Exhibit 10.**

82. The inquiry does not request the employees' current home address. **Exhibit 10.**

83. There inquiry could have been prepared in a manner in which there would have been room to place an employee's current address in order to confirm if it was the correct address. **Exhibits 10 & 11.**

84. Mr. Madonia responded to the CGLIC inquiry by facsimile transmission on November 4, 2002. **Exhibit 12.**

85. Mr. Madonia confirmed that CGLIC should bill Plaintiff at his home. **Exhibit 12.**

86. There is no evidence that CGLIC called or wrote to Bridgestone to ask for Plaintiff's home address, even though CGLIC knew that the address on file was inaccurate and the previous correspondence allegedly sent to Plaintiff had been returned by the post office. **Exhibits 7 (numbers 16, 17, 18, 23, 24), 8, & 9.**

87. In its answers to Plaintiff's interrogatory numbers 11, 12, 17, 18, 21 & 22, and its responses to Plaintiff's request for the production of documents number 39, 40, CGLIC stated it "has no obligation to verify the correct address of an insured. It is the insured's responsibility to update CGLIC of any change in address." **Exhibit 13.**

88. In its answer to Plaintiff's interrogatory number 23, CGLIC stated that it "automatically sends first and second request for payment of premiums prior to coverage lapsing, and that each bill is mailed to the address on file at the time of the billing." **Exhibit 13.**

89. In its answer to Plaintiff's interrogatory number 23, CGLIC stated that "[t]he address that CGLIC had on file for plaintiff at the time his 2001 and 2002 annual reports were mailed was 203 Holly Lane, Woonsocket, RI." **Exhibit 13.**

90. This information was confirmed in CGLIC's answer to Plaintiff's interrogatory

number 15. **Exhibit 13.**

91. CGLIC's answers to Plaintiff's interrogatories were signed by Renee Worst. **Exhibit 13.**

92. Renee Worst also signed an Affidavit on behalf of CGLIC in support of CGLIC's motion for summary judgment (the "Worst Affidavit"). **Exhibit 14.**

93. Paragraphs 6, 7, 9 & 10 of the Worst Affidavit state that CGLIC sent mailings to Plaintiff at his Slatersville, Rhode Island address in August, September, November and December 2002. **Exhibit 14.**

94. CGLIC does not have any documents verifying that (i) this correspondence was mailed to Plaintiff, (ii) who mailed this correspondence, (iii) to what address this correspondence was mailed, (iv) the content of this correspondence, (v) the manner of mailing (ie: certified mail, U.S. mail, registered mail), (vi) that the correspondence was returned to CGLIC, or (vii) who on behalf of CGLIC received the returned mailings. **Exhibits 7 (numbers 8, 9, 16, 17, 18) 8 & 9.**

95. Paragraphs 6 & 7 of the Worst Affidavit state that the correspondence mailed to Plaintiff in August and September was returned to CGLIC as being undeliverable. **Exhibit 14.**

96. There are no entries in the Worst Affidavit regarding the status of the correspondence allegedly sent to Plaintiff in November and December 2002. **Exhibit 14.**

97. The mailings allegedly made to Plaintiff in November and December 2002 are not reflected in the CGLIC History. **Exhibit 9.**

98. Paragraphs 6, 7, 9 & 10 of the Worst Affidavit affirming that Plaintiff's

address of record was Slatersville, Rhode Island, contradict CGLIC's answers to Plaintiff's interrogatory numbers 15 & 23 wherein Ms. Worst affirmed that the last address CGLIC had on file for Plaintiff was 203 Holly Lane, Woonsocket, Rhode Island. **Exhibits 13 & 14.**

99. The Policy states that CGLIC "***will notify*** the Class A, Class B, Class D, Former Class A, Former Class B, and Spouse of a Former Class A Insured, or Owner, if different, that there is insufficient Cash Value for him under the Policy." This provision states:

> **Grace Period For Insured**. If the Net Cash Value for any Insured on any Monthly Premium Date is less than the required Monthly Deduction, a Grace Period For Insured of 61 days will be granted to the Insured to pay a premium sufficient to cover the required Monthly Deduction for the next two months. If such premium is not paid within the Grace Period For Insured, the coverage under the Policy for that Insured and any Class C Insureds for whom he has elected the insurance will lapse without value at the end of the Grace Period For Insured.
>
> At least 31 days before the end of the Grace Period For Insured, CG ***will notify*** the Class A, Class B, Class D, Former Class A, Former Class B, and Spouse of a Former Class A Insured, or Owner, if different, that there is insufficient Cash Value for him under the Policy. Failure to give notice will not extend the Death Benefit beyond the Grace Period. (*emphasis added*)
>
> The insurance . . . will cease on . . . the date the Insured's coverage lapses. **Exhibit 1, Pages 30 & 35.**

100. Plaintiff did not receive any correspondence from CGLIC in the form of a bill or in the form of a notice of lapsed premium payments. **Stuckey Aff. ¶¶ 57 & 58, Exhibits 7 (numbers 8, 9, 16, 17, 18, 24) 8 & 9.**

101. CGLIC did not notify Plaintiff of a lapse in premiums. **Stuckey Aff. ¶¶ 57 & 58, Exhibits 7 (numbers 8, 9, 16, 17, 18, 24) 8 & 9.**

102. The Policy requires CGLIC to notify a policyholder "[a]t least *31 days* before

the end of the Grace Period For Insured . . . that there is insufficient Cash Value for him under the Policy. This provision states:

> At least ***31 days*** before the end of the Grace Period For Insured, CG will notify the Class A, Class B, Class D, Former Class A, Former Class B, and Spouse of a Former Class A Insured, or Owner, if different, that there is insufficient Cash Value for him under the Policy. Failure to give notice will not extend the Death Benefit beyond the Grace Period. (*emphasis added*) (emphasis added) **Exhibit 1, Page 35.**

103. Paragraph 11 of the Worst Affidavit states "CGLIC on December 10, 2002, mailed a reminder notice of premiums due to plaintiff at his address of record (Slatersville, Rhode Island) for the months of July 2002 through March, 2003. This notice also alerted plaintiff that payment must be made by December 28, 2002 or his coverage would lapse." **Exhibit 14.**

104. The affirmation by Ms. Worst in Paragraph 17 states that "Plaintiff's coverage lapsed on January 9, 2003 due to the non-payment of premiums." **Exhibit 14.**

105. The time period between December 10, 2002 and January 9, 2003, excluding the mailing date, is twenty-nine (29) days.

106. The notice allegedly mailed by CGLIC on December 10, 2002 was defective because CGLIC should have advised Plaintiff that the termination date was January 11, 2003.

107. It was Plaintiffs intention to maintain the Policy after his retirement. **Stuckey Aff. ¶59.**

108. Plaintiff would have paid the unpaid premiums if he had received notice of a deficiency. **Stuckey Aff. ¶60.**

Plaintiff,
William J. Stuckey, Jr.
By his Attorneys,

/S/ ___________________________
Carl S. Levin, Esq. # 3336
Armstrong, Gibbons & Gnys, LLP
155 South Main Street, Suite 301
Providence, RI 02903
(401) 751-1500
(401) 751-4124 (fax)
*clevin@agglaw.com*

**CERTIFICATION OF SERVICE**

I, the undersigned, hereby certify that on the 25th day of July, 2008, I caused to be served a true copy of the within Plaintiff's Rule 56(a) Undisputed Statement of Facts to the following counsel of record:

Brooks R. Magratten, Esq.
Catherine A. Shaghalian, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

James A. Ruggieri, Esq.
Higgins, Cavanagh & Cooney, LLP.
123 Dyers Street
Providence, RI 02903

Jason D. Fisher, Esq.
Waller, Landsen, Dortch & Davis, LLP.
511 Union Street, Suite 2700
Nashville, TN 37219

/S/
___________________________
Carl S. Levin, Esq.