**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| WILLIAM J. STUCKEY, JR. | : | |
| | : | |
| V. | : | C.A. No. 07-310ML |
| | : | |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, BRIDGESTONE AMERICAS HOLDING, INC. f/k/a BRIDGESTONE/ FIRESTONE AMERICAS HOLDING, INC. & JOHN DOE | : | |

**AFFIDAVIT OF WILLIAM J. STUCKEY, JR.**

I, William J. Stuckey, Jr., under oath do affirm the following:

1. I was employed by Bridgestone/Firestone Americas Holding, Inc. ("Bridgestone") from August 1971 to September 2002.

2. Since July 1999, I have resided at 2008 Mineral Spring Avenue, Unit 12, North Providence, Rhode Island.

3. Between September 1998 and July 1999, I lived at 36 Fillion Drive, Slatersville, Rhode Island.

4. Between July 1998 and September 1998, I lived at 203 Holly Lane, Woonsocket, Rhode Island.

5. Between September 1997 and July 1998, I lived at 10 Montrose Street, Providence, Rhode Island.

6. Between 1989 and September 1997, I lived at 5 Plantation Drive, Cumberland, Rhode Island.

7. Each time I relocated, I prepared and filed a Notice of Mail Forwarding with the United States Postal Service.

8. Each time I relocated, I notified Bridgestone of my new mailing address and telephone number.

9. My home telephone numbers have always been public and listed in the telephone directory.

10. I have never had a post office box as a means of receiving mail.

11. I began a medical leave of absence from Bridgestone in March, 2002.

12. I remained on a medical leave of absence until September 2002, at which time I gave my notice of my retirement to Bridgestone.

13. While employed by Bridgestone, I entered into a group universal life policy (the "Policy") through Bridgestone in 1986. **Exhibit 1**

14. Johnson & Higgins/Kirke-Van Orsdel, Inc. ("Johnson & Higgins") was the broker for the Policy.

15. The face amount was $210,000.00.

16. At that time that I entered into the contract, I advised Johnson & Higgins that I was a diabetic.

17. My payments for the Policy were deducted monthly from my paycheck by Bridgestone and forwarded to the carrier through July 2002.

18. I was unable to communicate directly with CGLIC, and was always instructed that any policy-related issues were to be handled through Bridgestone.

19. When My wife died in 1990, I notified Bridgestone, which in turn notified the carrier.

20. Any changes that I made to the named beneficiary for the Policy were done through Bridgestone.

21. In 1997, I notified Bridgestone that I wanted to change the beneficiary under the Policy.

22. I received correspondence from Johnson & Higgins regarding my request. **Exhibit 2**

23. In 1999, I notified Bridgestone that I wanted to make my daughter, Alissa Stuckey, the named beneficiary of the Policy.

24. I received correspondence from Johnson & Higgins regarding my request. **Exhibit 3**

25. In 1997 and 1999, I completed the necessary documents and mailed the documents to Johnson & Higgins.

26. Except as described herein, I never had any correspondence, verbal or written, with CGLIC while I was a participant in the universal group life Insurance program.

27. I first became aware that I was insured by CGLIC when I received a copy of the Policy and a CGLIC insurance certificate in 1990 at my Plantation Drive address. **Exhibits 1 & 4**

28. I did not receive any other correspondence from CGLIC regarding the Policy.

29. In addition to enrolling in the group universal life insurance policy, I also had a basic life insurance policy with CGLIC that was provided through Bridgestone.

30. While employed by Bridgestone, I received healthcare benefits from CIGNA Healthcare and Delta Dental, and I was a participant in a retirement plan with Fidelity Investments.

31. I never notified CIGNA Healthcare, Delta Dental or Fidelity Investments of any

changes in my addresses.

32. Upon information and belief, Bridgestone notified CIGNA Healthcare, Delta Dental and Fidelity Investments of my changes in addresses.

33. I received documents from CIGNA Healthcare, Delta Dental and Fidelity Investments at all of my addresses both prior and subsequent to my retirement.

34. I received documents from Bridgestone at all of my addresses. **Exhibit 5**

35. When I retired from Bridgestone, I did not notify CGLIC, CIGNA Healthcare, Delta Dental or Fidelity Investments of my retirement because I believed that Bridgestone would make the required notifications.

36. My belief that Bridgestone would notify CGLIC, CIGNA Healthcare, Delta Dental and Fidelity Investments of my retirement was confirmed by the fact that I continued to receive written correspondence from CIGNA Healthcare, Delta Dental and Fidelity Investments at my home address after my retirement.

37. I have continued to receive correspondence from Bridgestone at my home address following my retirement. **Exhibit 5**

38. I did not receive my pension for the first five months of my retirement.

39. I contacted Bridgestone to resolve the problem with my pension and to inquire into the status of the Policy.

40. Bridgestone advised I had to contact CGLIC directly to inquire about the Policy.

41. I first learned that the Policy was terminated in October 2003 when I contacted CGLIC regarding the Policy.

42. The person with whom I spoke at CGLIC told me that in order to reinstate the Policy, I was required to undergo an examination by a medical technician

43. I underwent a medical examination, during which I told the technician that I was a diabetic since 1975.

44. Based upon my being a diabetic, CGLIC refused to re-instate the Policy. **Exhibit 6**

45. I was never told by CGLIC, Johnson & Higgins or Bridgestone that I was required to notify CGLIC of any change in my address.

46. The Policy does not contain any reference to my address. **Exhibit 1**

47. The Policy does not contain any requirement that I was to notify CGLIC of any change in my mailing address. **Exhibit 1**

48. The Policy does not contain any provision that required me to notify any person of any change in my mailing address. **Exhibit 1**

49. I never received any written or verbal communication from CGLIC, Bridgestone or Johnson & Higgins that the Policy payments had not been made.

50. I never received any written or verbal communication from CGLIC, Bridgestone or Johnson & Higgins that the Policy was going to be terminated due to a lapse in premium payments.

51. I never received any written or verbal communication from CGLIC, Bridgestone or Johnson & Higgins that the Policy was terminated.

52. I never received any of the notices that CGLIC allegedly mailed to me.

53. I never received notice from any person that CGLIC mailed any correspondence to me regarding the premiums for the Policy.

54. Other than receiving a copy of the policy and the certificate in 1990, I never received any annual reports or certificates from CGLIC.

55. I never received any notice from any person that CGLIC had mailed annual reports or certificates to me other than that received in 1990.

56. I was never notified by CGLIC, Johnson & Higgins or Bridgestone that CGLIC did not have a mailing address for me since July 1998, during which time CGLIC continued to accept my monthly paycheck deductions.

57. I was never notified by CGLIC that there had been a lapse in premium payments.

58. I did not receive any correspondence from CGLIC in the form of a bill or in the form of a notice of lapsed premium payments.

59. It was my intention to maintain the Policy after my retirement.

60. I would have paid the unpaid premiums if I had received notice of a deficiency.

William J. Stuckey, Jr.

**STATE OF RHODE ISLAND**
**PROVIDENCE, SC.**

On this Providence day of July, 2008 before me, the undersigned notary public, personally appeared William J. Stuckey, Jr. the person whose name is signed on the preceding or attached documents, and acknowledged to me that he signed it voluntarily for its stated purpose.

Notary Public: Jennifer L O'Brien
My commission expires: 7/20/10