**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| WILLIAM J. STUCKEY, JR. | : | |
| | : | |
| V. | : | C.A. No. 07-310ML |
| | : | |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, BRIDGESTONE AMERICAS HOLDING, INC. f/k/a BRIDGESTONE/ FIRESTONE AMERICAS HOLDING, INC. & JOHN DOE | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT CONNECTICUT GENERAL LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff, William J. Stuckey, Jr., and files this memorandum of law in support of the Plaintiff's motion for summary judgment and in opposition to the motion for summary judgment filed by Defendant, Connecticut General Life Insurance Company ("CGLIC").

## FACTS

Plaintiff was employed by Bridgestone/Firestone Americas Holding, Inc. ("Bridgestone") from August 1971 to September 2002. **(SUF ¶1).**[1] During his employment, Plaintiff lived at 5 Plantation Drive, Cumberland, Rhode Island between 1989 and September 1997; 10 Montrose Street, Providence, Rhode Island between September 1997 and July 1998; 203 Holly Lane, Woonsocket, Rhode Island between July 1998 and September 1998; and 36 Fillion Drive, Slatersville, Rhode Island between September 1998 and July 1999. **(SUF ¶¶3, 4, 5 & 6).** Plaintiff has resided at 2008 Mineral Spring Avenue, Unit 12, North Providence, Rhode Island since July 1999. **(SUF**

[1] All references to the Statement of Undisputed Facts (SUF) refers to Plaintiff's Statement of Undisputed Facts.

**¶3).** Each time Plaintiff relocated, he prepared and filed a Notice of Mail Forwarding with the United States Postal Service, and notified Bridgestone of his new mailing address and telephone number. **(SUF ¶7).** Plaintiff's home telephone numbers have always been public and listed in the telephone directory, and Plaintiff has never had a post office box as a means of receiving mail. **(SUF ¶¶8 & 9).**

While employed by Bridgestone, Plaintiff entered into a group universal life policy (the "Policy") through Bridgestone in 1986, for which Johnson & Higgins/Kirke-Van Orsdel, Inc. ("Johnson & Higgins") was the broker. **(SUF ¶¶13 & 14).** The face amount of the Policy was $210,000.00[2]. **(SUF ¶15).** When Plaintiff entered into this contract, he acknowledged being a diabetic. **(SUF ¶16).** Plaintiff's payments for the Policy were deducted monthly from his paycheck by Bridgestone and forwarded to the carrier. **(SUF ¶17).** Plaintiff first became aware that he was insured by CGLIC when he received a copy of the CGLIC policy and the CGLIC insurance certificate in 1990 at his Plantation Drive address. **(SUF ¶19).** Plaintiff did not receive any other correspondence from CGLIC regarding his policy. **(SUF ¶20).**

Plaintiff was unable to communicate directly with CGLIC, and was always instructed that any policy-related issues were to be handled through Bridgestone. **(SUF ¶21).** When Plaintiffs wife died in 1990, Plaintiff notified Bridgestone, which in turn notified the carrier. **(SUF ¶22).** Any changes that Plaintiff made to the named beneficiary for the policy were done through Bridgestone. **(SUF ¶23).** In 1997, Plaintiff notified Bridgestone that he wanted to change the beneficiary under his policy. **(SUF ¶24).** Thereafter, Plaintiff received correspondence from Johnson & Higgins regarding

---

[2] In addition to purchasing a group universal life insurance policy, Plaintiff also had a basic life insurance policy with CGLIC that was provided through Bridgestone. **(SUF ¶29).**

this request. **(SUF ¶25).** In 1999, Plaintiff notified Bridgestone that he wanted to make his daughter, Alissa Stuckey, the named beneficiary of his policy. **(SUF ¶26).** Thereafter, Plaintiff again received correspondence from Johnson & Higgins regarding this request. **(SUF ¶27).** In both instances, Plaintiff completed the necessary documents and mailed the documents to Johnson & Higgins. **(SUF ¶28).**

While employed by Bridgestone, Plaintiff received healthcare benefits from CIGNA Healthcare and Delta Dental, and participated in a retirement plan with Fidelity Investments. **(SUF ¶30).** Plaintiff received documents from CIGNA Healthcare, Delta Dental and Fidelity Investments at all of his residences both prior and subsequent to his retirement. **(SUF ¶31).** Plaintiff never notified CIGNA Healthcare, Delta Dental or Fidelity Investments of any change in addresses, and believes that Bridgestone notified CIGNA Healthcare, Delta Dental and Fidelity Investments of Plaintiff's addresses both prior and subsequent to his retirement. **(SUF ¶¶32 & 34).** Similarly, Plaintiff did not notify CGLIC of his retirement because he believed that Bridgestone would also make this notification of the change in his employment status. **(SUF ¶35).** Plaintiff received correspondences from Bridgestone at his addresses both prior and subsequent to his retirement. **(SUF ¶¶33 & 37)**.

Plaintiff began a medical leave of absence from Bridgestone in March, 2002, and remained on a medical leave of absence until September 2002, at which time he gave his notice of his retirement to Bridgestone. **(SUF ¶¶1 & 12).** Plaintiff's Policy payments were deducted monthly from his paycheck through July 2002. **(SUF ¶17)**. Plaintiff did not receive his pension for the first five months after his retirement, and contacted Bridgestone to resolve the problem with his pension and to inquire into the status of the

Policy. **(SUF ¶¶37 & 38).** A Bridgestone representative advised Plaintiff to contact CGLIC directly to inquire about his policy. **(SUF ¶39).** Plaintiff contacted CGLIC in October 2003, at which time he learned that his policy was terminated due to a lapse of payment. **(SUF ¶40).**

The monthly premium date for payments deducted by Bridgestone on behalf of Plaintiff was the first of each calendar month. In the event of a deficiency, the Policy provides in pertinent part:

> **Grace Period For Insured.** If the Net Cash Value for any Insured on any Monthly Premium Date is less than the required Monthly Deduction, a Grace Period For Insured of 61 days will be granted to the Insured to pay a premium sufficient to cover the required Monthly Deduction for the next two months. If such premium is not paid within the Grace Period For Insured, the coverage under the Policy for that Insured and any Class C Insureds for whom he has elected the insurance will lapse without value at the end of the Grace Period For Insured.
>
> At least 31 days before the end of the Grace Period For Insured, CG ***will notify*** the Class A, Class B, Class D, Former Class A, Former Class B, and Spouse of a Former Class A Insured, or Owner, if different, that there is insufficient Cash Value for him under the Policy. Failure to give notice will not extend the Death Benefit beyond the Grace Period. (*emphasis added*)
>
> The insurance . . . will cease on . . . the date the Insured's coverage lapses.
>
> After an Insured's coverage has lapsed, it may be reinstated at any time prior to five years after the date of Lapse if:
>
> - the Insured's Certificate has not been Surrendered fro the Cash Value; and
> - a written request for Reinstatement and a new enrollment form were sent to CG; and
> - the Insurability Requirement has been satisfied; and
> - Planned Monthly Premiums are paid for at least two months; and
> - Any Indebtedness against the Insured's Cash Value, increased by any Loan Interest, is paid.
>
> **(SUF ¶99).**

Plaintiff never received any communication, verbal or written, from CGLIC, Bridgestone or Johnson & Higgins that his policy payments had not been made or that the Policy would be terminated for nonpayment. **(SUF ¶¶48, 49 & 100).** It was Plaintiff's intention to maintain the Policy after his retirement, and he would have paid the unpaid premiums if he had received notice of a deficiency. **(SUF ¶¶106 & 107).**

The person with whom Plaintiff spoke at CGLIC told him that in order to reinstate the Policy, Plaintiff was required to undergo an examination by a medical technician. **(SUF ¶41).** Plaintiff underwent the examination, during which he told the technician that he had been a diabetic since 1975. **(SUF ¶42).** Based upon Plaintiff having had diabetes, CGLIC refused to re-instate his policy. **(SUF ¶43).**

The CGLIC policy does not contain any requirement that Plaintiff was to notify CGLIC or any other person of any change in his address, and the Policy does not contain any reference to Plaintiff's address. **(SUF ¶¶45, 46 & 47).** Plaintiff was never told by CGLIC, Johnson & Higgins or Bridgestone that he was required to notify CGLIC of any change in his address. **(SUF ¶44).**

Pursuant to the terms of the Policy, as set forth on Page 39, CGLIC was required to send to Plaintiff on an annual basis a report, which was to be attached to the certificate. **(SUF ¶54).** Other than receiving a copy of the policy and the certificate in 1990, Plaintiff never received any annual reports or certificates from CGLIC. **(SUF ¶55).**

CGLIC prepared a History of Plaintiffs policy (the "CGLIC History") which was submitted by CGLIC its 26(a) filing and in response to Plaintiff's request for the production of documents. **(SUF ¶58).** The July 20, 1998, entry in the CGLIC History reflects that CGLIC received a certificate packet that had been allegedly mailed to

Plaintiff and was returned to CGLIC with the notation "unable to forward". **(SUF ¶59).** CGLIC does not have any documents verifying that (i) this correspondence was mailed to Plaintiff, (ii) who mailed this correspondence, (iii) to what address this correspondence was mailed, (iv) the content of this correspondence, (v) the manner of mailing (ie: certified mail, U.S. mail, registered mail), (vi) that the correspondence was returned to CGLIC, or (vii) who on behalf of CGLIC received the returned mailings. **(SUF ¶60).** The CGLIC history does not reflect any effort by CGLIC to contact Plaintiff, Bridgestone or Johnson & Higgins to obtain Plaintiff's mailing address after being advised that the post office was unable to forward the mailing. **(SUF ¶61).** Additionally, Plaintiff was never notified by CGLIC, Johnson & Higgins or Bridgestone that CGLIC did not have a mailing address for him since July 1998, during which time CGLIC accepted payroll deductions for the Policy. **(SUF ¶62).**

The CGLIC History contains the following:

- In July 2002, CGLIC was made aware that Plaintiff was on inactive work status due to a leave of absence since June 2002.
- The August 19, 2002 entry in the CGLIC History reflects that in July 2002 CGLIC did not receive the payment of $70.70 for Plaintiff because he was on leave of absence, and that a direct bill was sent to Plaintiff.
- The September 5, 2002 entry in the CGLIC History reflects that the direct bill mailed to Plaintiff was returned with the notation "unable to deliver".
- The September 18, 2002 entry in the CGLIC History reflects that in August 2002 CGLIC did not receive the payment of $70.70 for Plaintiff because he was on leave of absence, and that a direct bill was sent to Plaintiff.
- The October 18, 2002 entry in the CGLIC History reflects that the direct bill mailed to Plaintiff was returned with the notation "address unknown".

- The November 5, 2002 entry in the CGLIC History reflects that "per Ray" the Plaintiff was to be placed on direct bill because he was on leave of absence.[3]
  **(SUF ¶¶64, 65, 69, 70 & 74).**

CGLIC also does not have any documents verifying that (i) this correspondence was mailed to Plaintiff, (ii) who mailed this correspondence, (iii) to what address this correspondence was mailed, (iv) the content of this correspondence, (v) the manner of mailing (ie: certified mail, U.S. mail, registered mail), (vi) that the correspondence was returned to CGLIC, or (vii) who on behalf of CGLIC received the returned mailings. The CGLIC History also does not reflect any effort by CGLIC to obtain Plaintiffs mailing address, including any effort by CGLIC to contact Plaintiff, Bridgestone or Johnson & Higgins to obtain Plaintiffs mailing address. **(SUF ¶72).** The CGLIC history also does not reflect any effort by CGLIC to contact Plaintiff, Bridgestone or Johnson & Higgins to obtain Plaintiff's mailing address after being advised that the post office was unable to deliver the August 2002 mailing. **(SUF ¶73).**

In its response to Plaintiff's request for the production of documents, Bridgestone provided a copy of written correspondence dated November 4, 2002, from Debra Paul, Reconciliation Representative for CIGNA Group Universal Life Insurance (the "CGLIC Inquiry"), to Ray Madonia, who was a Bridgestone employee. **(SUF ¶¶76 & 77).** The Inquiry was sent by facsimile transmission to Bridgestone, seeking information regarding certain employees, including Plaintiff, because CIGNA had not received payroll deductions for these employees, and so that CIGNA could determine whether to send bills to these employees at their homes. **(SUF ¶¶78 & 79).** The inquiry includes the

[3] The CGLIC history does not reflect that any correspondence was mailed to Plaintiff after this entry. **(SUF ¶71).**

employee's name, social security number, the amount billed, the amount paid, the employee's status and whether the employee should be billed at home. **(SUF ¶80).** The inquiry does not request the employees' home address or to confirm the employee's home address, and clearly could have been prepared in a manner to confirm the employee's address. [4] **(SUF ¶¶81, 82 & 83).** Mr. Madonia responded to the Inquiry by facsimile transmission on November 4, 2002, confirming that CIGNA should bill Plaintiff at his home. **(SUF ¶¶84 & 85).** There is no evidence that CGLIC called or wrote to Bridgestone to ask for Plaintiff's home address after receiving Mr. Madonia's response, even though CGLIC knew that the address on file was inaccurate and that the previous correspondence allegedly sent to Plaintiff had been returned by the post office. **(SUF ¶86).**

In its answer to Plaintiff's interrogatory number 23, CGLIC stated that it "automatically sends first and second requests for payment of premiums prior to coverage lapsing, and that each bill is mailed to the address on file at the time of the billing." **(SUF ¶87).** In its answers to Plaintiffs interrogatory numbers 11, 12, 17, 18, 21

---

4

| *EIN* | *Name* | *Amount Billed* | *Amount Paid* | *Status* | *Reason* | *Address* |
|---|---|---|---|---|---|---|
| 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 | W Stuckey Jr* | 70.70 | 0.00 | LOA since 7/02 | Should we put this employee on a bill at home basis? YES | 203 Holly Lane, Woonsocket RI? |

***or***

| *EIN* | *Name* | *Amount Billed* | *Amount Paid* | *Status* | *Reason* | *Address* |
|---|---|---|---|---|---|---|
| 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 | W Stuckey Jr* | 70.70 | 0.00 | LOA since 7/02 | Should we put this employee on a bill at home basis? YES | 36 Fillion Drive, Slatersville, RI? |

& 22, and its response to Plaintiff's request for the production of documents number 40, CGLIC stated it "has no obligation to verify the correct address of an insured. It is the insured's responsibility to update CGLIC of any change in address." **(SUF ¶88).** Further, in its answer to Plaintiffs interrogatory number 23, CGLIC stated that "[t]he address that CGLIC had on file for plaintiff at the time his 2001 and 2002 annual reports were mailed was 203 Holly Lane, Woonsocket, RI." **(SUF ¶89).** The address was confirmed in CGLIC's answer to Plaintiff's interrogatory number 15. **(SUF ¶90).** CGLIC's answers to plaintiff's interrogatories were signed by Renee Worst. **(SUF ¶91).**

Renee Worst also signed an Affidavit on behalf of CGLIC (the "Worst Affidavit") in support of CGLIC's motion for summary judgment **(SUF ¶92)**, which conflicted with her answers to Plaintiff's interrogatories. Paragraphs 6, 7, 9 & 10 of the Worst Affidavit state that CGLIC sent mailings to Plaintiff at his Slatersville, Rhode Island address in August, September, November and December 2002. **(SUF ¶93).** CGLIC does not have any documents verifying that (i) this correspondence was mailed to Plaintiff, (ii) who mailed this correspondence, (iii) to what address this correspondence was mailed, (iv) the content of this correspondence, (v) the manner of mailing (ie: certified mail, U.S. mail, registered mail), (vi) that the correspondence was returned to CGLIC, or (vii) who on behalf of CGLIC received the returned mailings. **(SUF ¶94).**

Furthermore, the mailings allegedly made by CGLIC in November and December 2002 are not reflected in the CGLIC History **(SUF ¶97)**, and there are no entries in the Worst Affidavit regarding the status of the November and December mailings. **(SUF ¶96).** Paragraphs 6, 7, 9 & 10 of the Worst Affidavit affirming that Plaintiff's address of record was Slatersville, Rhode Island, contradict Ms. Worst's answer to Plaintiff's

interrogatory numbers 15 & 23 wherein she affirmed that the last address CGLIC had on file for Plaintiff was 203 Holly Lane, Woonsocket, Rhode Island. **(SUF ¶98).**

The Policy clearly and unambiguously requires CGLIC to notify the policyholder of a lapse in premium payments. **(SUF ¶99).** CGLIC did not notify Plaintiff of a lapse in premium payments. **(SUF ¶¶100 & 101).** It was Plaintiffs intention to maintain the Policy after his retirement, and he would have paid the unpaid premiums if he had received notice of a deficiency. **(SUF ¶¶107 & 108).**

The Policy also requires CGLIC to notify a policyholder "[a]t least *31 days* before the end of the Grace Period For Insured . . . that there is insufficient Cash Value for him under the Policy. **(SUF ¶102).** Paragraph 11 of the Worst Affidavit states "CGLIC on December 10, 2002, mailed a reminder notice of premiums due to plaintiff at his address of record (Slatersville, Rhode Island) for the months of July 2002 through March, 2003. This notice also alerted plaintiff that payment must be made by December 28, 2002 or his coverage would lapse." **(SUF ¶103).** Paragraph 17 of the Worst Affidavit states "Plaintiff's coverage lapsed on January 9, 2003 due to the non-payment of premiums." **(SUF ¶104).** The time period between December 10, 2002 and January 9, 2003, excluding the date of mailing, is twenty-nine (29) days days. **(SUF ¶105).** Therefore, the notice allegedly mailed by CGLIC on December 10, 2002 should have advised Plaintiff that the termination date was January 11, 2003. **(SUF ¶106).** As a result, the notice allegedly mailed by CGLIC on December 10, 2002 is defective.

Plaintiff filed suit in the Providence County Superior Court against Bridgestone and CGLIC for negligence, breach of contract, breach of the duty of good faith and fair

dealing, breach of fiduciary duty and unjust enrichment.[5]

## ARGUMENT

**Summary judgment should enter for Plaintiff and against CGLIC because there are no genuine issues of material fact in dispute as they relate to Plaintiff's claims and because Plaintiff is entitled to judgment as a matter of law.**

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

> [J]udgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

First Circuit opinions have provided the courts with guidance regarding the standard for granting or denying a motion for summary judgment. The court may find the existence of a material fact when it has the "potential to affect the outcome of the suit under the applicable law." *Nereida-Gonzalez v. Tirado-Delgagdo,* 990 F.2d 701, 703 (1st Cir.1993). A court may also determine that a party has raised a genuine issue as to any material fact when such fact is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)

Because both Plaintiff and CGLIC have filed motions for summary judgment, each has the burden as a moving party to establish a lack of evidence to support the other party's case. *Dow v. United Brotherhood of Carpenters and Joiners of America,* 1 F.3d 56, 58 (1st Cir.1993) Once either party has met this burden, the burden of production shifts to the other party to establish "tender significant probative evidence that

[5] The case was removed to Federal Court for several reasons, including CGLIC's belief that Plaintiff's claims may involve a claim under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001 et seq. CGLIC subsequently acknowledged in its answer to Plaintiff's interrogatory number 25 that Plaintiff's claims are not subject to this Act.

establishe[s] the existence of a material fact in dispute, which evidence "must be viewed in the light most favorable to that party . . . however . . . absent specific facts discrediting testimony from a witness associated with the movant, and absent a direct conflict in the testimony, the opponent ... is not entitled to have the defendant's evidence positively disbelieved." *Grubb v. KMS Patriots, LP.*, 88 F.3d 1, 4 (1st Cir.1996). The nonmovant's evidence "illustrating the factual controversy cannot be conjectural or problematic; it must have substance...." *Medina-Munoz,* 896 F.2d 5, 8 (*quoting Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)).

**There is no material fact in dispute because CGLIC has no evidence that it mailed to Plaintiff premium bills and notices of a lapse in payment.**

There is no material fact in dispute that CGLIC cannot establish by admissible evidence that it mailed any correspondence to Plaintiff as set forth in the Worst Affidavit and in CGLIC's answers to interrogatories because CGLIC does not have copies of any of the letters allegedly mailed. Even the CGLIC History does not contain any admissible evidence that the letters were in fact mailed, who mailed the letters, to what address the letters were mailed, the content of the letters, and the manner of mailing (ie: certified mail, U.S. mail, registered mail).

Rule 803(6) of the Federal Rules of Evidence provides that certain documents will be admissible even though the declarant is available as a witness[6]. However, in order to

---

[6] (6) **Records of Regularly Conducted Activity**.--A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

be admissible, the proponent must be able to affirm, on the basis of personal knowledge, that the records were actually made. Absence of such an affirmation indicates a lack of trustworthiness. In applying the standard of admissibility set forth in Rule 803(6) to the instant matter, it is clear that CGLIC would not be able to introduce the CGLIC History as evidence of the mailing of the letters to Plaintiff because there is no evidence establishing that the letters were mailed, who mailed the letters, the content of the letters, to what address the letters were mailed and the manner of mailing. The lack of trustworthiness of this document is further evidenced by the fact that certain of the information contained in CGLIC's answers to Plaintiff's interrogatories (Plaintiff's last known address of 203 Holly Lane, Woonsocket, Rhode Island), and the Worst Affidavit (CGLIC allegedly mailed correspondence to Plaintiff on November 5 and December 10, 2002; and that Plaintiff's last known address was 36 Fillion Drive, Slatersville, Rhode Island) is not contained in the CGLIC History.

Rule 56(e) requires that an affidavit "be made on the basis of personal knowledge . . . set[ting] forth such facts as would be admissible in evidence . . . and show[ing] affirmatively that the affiant is competent to testify to the matters stated therein." Renee Worst could not testify as a proponent of the information contained in the CGLIC History because she has no records to rely upon to establish the trustworthiness of this document, nor is there a basis for her knowledge of the facts set forth in her Affidavit. In fact, Ms. Worst's lack of personal knowledge is demonstrated by the fact that her answer to Plaintiff's interrogatory numbers 15 & 23 that Plaintiff's last known address was 203 Holly Lane, Woonsocket, Rhode Island, contradicts her affirmations in Paragraphs 6, 7, 8

& 9 of her Affidavit that Plaintiff's last known address was 36 Fillion Drive, Slatersville, Rhode Island.

Therefore, based upon the foregoing, there can be no genuine issue of material fact in dispute because CGLIC cannot offer any admissible evidence to support its claims (i) that notices were mailed to Plaintiff, (ii) who mailed the letters, (iii) to what address the letters were mailed, (iv) the content of the letters, (v) the manner of mailing (ie: certified mail, U.S. mail, registered mail), or (vi) that the letters were returned to CGLIC.

**Plaintiff is entitled to judgment as a matter of law because CGLIC breached its duty under the Policy to notify Plaintiff of the lapse in payment.**

Plaintiff's motion for summary judgment, and his opposition to CGLIC's motion for summary judgment, is premised upon CGLIC's failure to notify Plaintiff of the lapse in payment and potential termination of the Policy.[7]

"Where a policy's cancellation provision is ambiguous, it is generally construed to require actual receipt, since that is the interpretation which is most favorable to the insured. Likewise, where the policy simply requires notice to the insured without specifying any particular form or way for giving the notice, actual receipt by the insured is almost universally recognized as a condition precedent to valid cancellation." *Couch on Insurance* 3d, §32:17. The pertinent language of the Policy, which requires CGLIC to notify the insured, is clear and unambiguous, and should be enforced as it is written requiring CGLIC to give Plaintiff actual notice of the lapse and potential termination. *See Kelly v. Tillotson-Pearson, Inc.*, 840 F.Supp. 935, 943 (D.R.I.1994).

---

[7] CGLIC's assertion that Plaintiff faults Bridgestone for the failure to provide him with premium notices is contrary to the averments contained in the Complaint.

In *Larocque v. Rhode Island Joint Reinsurance Ass'n.*, 536 A.2d 529 (R.I. 1988), the insurer mailed a notice of cancellation of a homeowner's insurance policy by certified mail, return receipt requested, to the insured's address. The policy did not set forth the manner in which the insurer was to give notice of cancellation. The insured's wife did not sign for the letter because she was unaware of the contents of the letter, and it was also noted that the postal notice of delivery slip did not identify the sender. With respect to the issue of the cancellation of an insurance policy, the Rhode Island Supreme Court held:

> It is well settled in this jurisdiction that notice of cancellation of an insurance policy must strictly comply with the cancellation provisions of the policy. When construing the terms of an insurance policy, any ambiguity that is created when applying the usual and ordinary meaning to the relevant terms must be construed against the insurer. Public policy dictates that the insured receive actual notice of cancellation. The purpose of a notice of cancellation of an insurance policy is to furnish the insured sufficient time to seek out and obtain coverage elsewhere before the termination of the existing policy. *Id.* at 530 - 531.

The Court also noted that the requirement of giving notice places a greater burden on the insurer than a policy requirement that notice be mailed, because even if it can be demonstrated that the notice was mailed, and the notice was never received by the insured, the proof of mailing is insufficient because the notice was never received and the cancellation is void. *Id.* at 532. Therefore, the Court ruled that the notice was ineffective because "[u]pon receiving the certified letter returned unsigned, the defendant was clearly aware of the possibility that the plaintiff had no knowledge of cancellation . . . [and that in such] circumstances fundamental fairness requires that the defendant should have done

more to ensure that the plaintiff was duly notified." *Ibid. See also DiProspero v. Nationwide Mut. Fire Ins. Co.*, 311 A.2d 561, 563 (Conn. 1973).[8]

In *Merrimack Mut. Fire Ins. Co. v. Scott*, 240 S.W.2d 666 (Ark. 1951), the insured renewed his automobile insurance policy with the insurer through the Automobile Club of New York Agency Co., Inc. (the "Club"), which was an authorized agent for the insurer, countersigned the policy and received the premiums. At the time of the purchase, the insured resided in New York. The insured subsequently notified the Club that the insured's new address would be in Arkansas. Thereafter, the Club sent notice to the insured at his New York address of the cancellation of the policy. The policy permitted notice of cancellation by mail to the address shown on the policy, and that proof of mailing would be sufficient proof of notice of cancellation. The Arkansas Supreme Court ruled that the notice was ineffective because where notice of the insured's change of address has been sent to the insurer, or knowledge thereof has been acquired by its agents, a notice to the insured at the address originally stated in the policy is not effective to bind him as the consequence thereof, at least in the absence of actual receipt of such notice of effective knowledge thereof." *Id.* at 668. *See also Wolonter v. United States Casualty Co.*, 101 S.E. 58, 61 (Va. 1919)[9]

In *Canavan v. Hanover Insurance Company*, 248 N.E. 2d. 271 (Mass. 1969), the insured purchased an automobile insurance policy from Hanover through the Forest Finance Company ("Forrest"), and provided his address as 35B Street, South Boston,

---

[8] "[A] cancellation notice contained in a letter mailed by the insurer but not received by the insured is ineffective as a valid cancellation."

[9] "[I]t was the duty of the [insurance] company to see that its records correctly set forth the facts that were communicated to it, and it will be held to the same measure of responsibility as if it had done so. The company makes and keeps its own records, and the assured is powerless to do more than communicate to it such facts as are necessary to enable it to make proper entries on its records. If from negligence or other cause not chargeable to the assured, its records do not correctly state the facts, they cannot be vouched in bar of a valid claim of an assured.'

Massachusetts. Forest prepared the application with an address of 35D Street. Hanover mailed the policy to the insured at 35D Street, which mailing was returned marked "No such number". Hanover again mailed the policy to the insured at the same address nine days later, which was returned with the same notation from the post office. Approximately three weeks later, Hanover sent a notice of cancellation to the same address, basing such cancellation on an unknown address and the failure to notify Hanover of the new address. It was also returned "No such number." The Court affirmed the trial judge's ruling that "[t]he mere sending of notice of cancellation to the insured by registered mail at the address stated in the policy without making any effort to ascertain the correctness of that address after it knew that the address was incorrect is ineffectual to cancel the policy. *Id.* at 272. *See also Irish v. Monitor Ins. Co. of Oakland County*, 264 Mich. 586, 250 N.W. 318 (MI 1933)[10], *Long v. Home Indem. Co. of New York,* 169 So. 154, 159 (La.App. 2 Cir. 1936).

In *Breitenbach v. Green*, 186 So.2d 712 (La.App. 1966), the insured purchased an automobile insurance policy from the Phoenix Insurance Company through an agent. There was evidence that the insured changed her mailing address Upon learning of the insured's employer and the nature of her employment, making her an uninsurable risk, the Phoenix sent a cancellation notice to the address listed on her policy, which was returned marked "Unknown". The Court found that the notice of cancellation was ineffective because it did not make a further effort to locate the insured by contacting the insured's employer or the insurance agent, whose knowledge was also considered the knowledge of the Phoenix. *Id.* at 718. *See also Griffin v. General Acc. Fire & Life*

[10] Notice ineffective where a cancellation notice mailed to the address on the policy was returned to the insurer, which upon further research located the insured's new address and mailed the notice to that address. A fire destroyed the insured's home prior to receipt of the notice at his new residence.

*Assur., Co.*, 116 N.E.2d 41, 46 (Ohio App. 1953), *Skipper v. Federal Insurance Co.*, 116 S.2d 520, 523 (La. 1959).

Based upon the foregoing, it is clear that CGLIC breached its duty to notify Plaintiff of the lapse in his premiums. The Policy's language that CGLIC "will notify" the policyholder of a lapse in premiums is clear and unambiguous, and must be construed against CGLIC. The purpose underlying this mandate is to ensure that the policyholder receives actual notice of lapse and possible cancellation in order to afford the policyholder the opportunity to obtain another life insurance policy.[11] It is beyond dispute that CGLIC had an obligation to ensure that Plaintiff received actual notice of the lapse, and that CGLIC did not fulfill this obligation.

Furthermore, CGLIC was not relieved of this obligation to provide notice to Plaintiff by mailing the communications to the address last known to CGLIC. In addition to the fact that there is no language in the Policy permitting such conduct, CGLIC was placed on notice in July 1998 and September 2002 that it did not have Plaintiff's correct mailing address. However, rather than make an effort to obtain Plaintiff's new mailing address by simply contacting Bridgestone, CGLIC continued to send letters to the same wrong address.[12] The Policy language, public policy and controlling case law make clear that CGLIC's course of conduct was ineffective to notify Plaintiff of the lapse in premiums.

---

[11] In preparing this Policy, CGLIC had the opportunity to insert a requirement that the policyholder was to notify CGLIC of any change in address, and that CGLIC would notify the policyholder at the last known address provided to CGLIC.

[12] CGLIC cannot establish that it mailed the correspondence to either 203 Holly Lane, Woonsocket, Rhode Island ***or*** to 36 Fillion Drive, Slatersville, Rhode Island.

The cases relied upon by CGLIC in support of its motion for summary judgment are simply inapplicable to the instant matter. *Wilbert v. Unum Life Ins. Co.*, 1998 WL 34100600 (D. R.I. 1998), is inapplicable because the disability policy in question did not require the insurer to provide the insured with notice of termination as a result of unpaid premiums. Rather, the policies provided that coverage would terminate if the payments were not received within the grace period. *Id.* at page 2. The other cases cited by CLGIC, *Pina v. Continental Cas. Co.*, 155 A. 696 (R.I. 1931), *Presentation Sisters, Inc. v. Mutual Benefit Life Ins. Co.*, 189 N.W. 2d 452 (S.D. 1971), *Cimon v. Gaffrey*, 401 F.3d 1 (1st Cir. 2005), *Letard v. General American Life Ins. Co.*, 2007 WL 540792 (E.D. Tenn. 2007), *Murphy v. North American Equitable Life Ins. Co.*, 1987 L 19482 (Ohio App. 1987) and *Lerner v. Travelers Ins. Co.*, 27 Misc. 2d 815 (NYS 1961) also involved policies that did not require notice of termination due to unpaid premiums. *McFarland v. Farm Bureau Mut. Auto Ins. Co.*, 93 A.2d 551 (MD 1953), is not applicable because the insured acknowledged receipt of the notice of possible termination if the premium was not paid in a timely manner. *Bezanson v. Metropolitan Ins. & Ann. Co.*, 952 F.2d 1 (1st Cir. 1991) concerned a notice of cancellation that was mailed to the policyholder's address, however, the policyholder's trustee neglected to pick up the mail, and the policy lapsed due to unpaid premiums. Finally, the court in *Yessick v. Midland Life Ins. Co.*, 178 F.Supp. 2d 1301 (N.D. Ga. 2001), found that the insurer was not required by statute to give notice of a lapse in coverage as opposed to a cancellation of the policy, and the insurer established that it had mailed notices to the insured which had not been returned.

Therefore, based upon the foregoing, Plaintiff is entitled to judgment as a matter of law because CGLIC breached its duty under the Policy to notify Plaintiff of the lapse in premiums.

**Plaintiff is entitled to judgment as a matter of law because CGLIC did not give Plaintiff proper notice of the lapse in payment under the Policy**

Finally, the Court should also grant Plaintiff's motion for summary judgment because the notice allegedly mailed to Plaintiff on December 10, 2002 was contrary to the Policy language that required CGLIC to provide a policyholder with thirty-one (31) days notice of a lapse in premiums. Assuming *arguendo* that the Court accepts CGLIC's representations that it did in fact mail notices to Plaintiff, and that CGLIC's mailing of notices to an invalid address was proper, which assumptions would be contrary to the facts and the law, the Court would also have to find that the notice allegedly given in the December 10, 2002 letter was invalid because the letter allegedly notified Plaintiff that the policy would lapse on December 28, 2002, and that CGLIC impermissibly lapsed the policy on January 9, 2003 when the thirty-one day period expired on January 11, 2003.[13]

## CONCLUSION

Based upon the foregoing, Plaintiff's motion for summary judgment should be granted. There is no material fact in dispute because CGLIC has no evidence that it mailed to Plaintiff premium bills and notices of a lapse in payment, Plaintiff is entitled to judgment as a matter of law because CGLIC breached its duty under the Policy to notify

[13] **§ 43-3-13. Computation of time.** "Whenever time is to be reckoned from any day, date, or act done, or the time of any act done, the day, date, or the day when the act is done shall not be included in the computation."

Plaintiff of the lapse in payment. Accordingly, CGLIC's motion for summary judgment should be denied.

Plaintiff,
William J. Stuckey, Jr.
By his Attorneys,

/S/

Carl S. Levin, Esq. # 3336
Armstrong, Gibbons & Gnys, LLP
155 South Main Street, Suite 301
Providence, RI 02903
(401) 751-1500
(401) 751-4124 (fax)
*clevin@agglaw.com*

**CERTIFICATION OF SERVICE**

I, the undersigned, hereby certify that on the 25th day of July, 2008, I caused to be served a true copy of the within Plaintiff's memorandum in support of his motion for summary judgment and in opposition to CGLIC's motion for summary judgment to the following counsel of record:

Brooks R. Magratten, Esq.
Catherine A. Shaghalian, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

James A. Ruggieri, Esq.
Higgins, Cavanagh & Cooney, LLP.
123 Dyers Street
Providence, RI 02903

Jason D. Fisher, Esq.
Waller, Landsen, Dortch & Davis, LLP.
511 Union Street, Suite 2700
Nashville, TN 37219

/S/

Carl S. Levin, Esq.